UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JULIA ESPEY,                                        CIV. NO. 13-2979(ADM/JSM)

        Plaintiff,                              REPORT AND RECOMMENDATION

v.

NATIONSTAR MORTGAGE, LLC, et.al.

        Defendants.

This matter came before the undersigned on defendants' Motion to Dismiss [Docket No. 4].  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(A), (B), Local Rule 72.1, and the Amended Administrative Order issued by Chief Judge Michael Davis on October 30, 2013 [Docket No. 3].  Pursuant to this Court's Order of November 19, 2013, this matter was decided on the parties' written submissions.

Plaintiff seeks to invalidate the foreclosure of the mortgage on her home.  Plaintiff asserts three claims against defendants Nationstar Mortgage, LLC ("Nationstar") and U.S. Bank National Association as Trustee for GSR Mortgage Loan Trust 2006-9F Mortgage Pass-Through Certificates Series 2006-9F ("U.S. Bank"):  (1) quiet title to determine adverse claims under Minn. Stat. § 599.01; (2) declaratory judgment; and (3) slander of title.  For the reasons below, the Court recommends that defendants'[1] Motion to Dismiss be granted and plaintiff's claims be dismissed with prejudice.

_____

[1]     In the caption of her Complaint, plaintiff also purports to sue "all other persons unknown claiming any right, title, estate, interest, or lien in the real estate described in the complaint herein."  As "[t]here are no factual allegations sufficient to identify these unnamed defendants or state a claim against them," the Court recommends that all

I.     BACKGROUND

On or about October 10, 2013, plaintiff sued defendants in state court.  Notice of

Removal, Ex. A (Summons and Complaint) [Docket No. 1-1].  Defendants removed the

suit to Federal District Court on October 30, 2013, pursuant to 28 U.S.C. §1332(a).

Notice of Removal [Docket No. 1].  The facts bearing on the motion to dismiss are as

follows.  Plaintiff entered into a Note and Mortgage ("Mortgage") with Home Loan

Center, Inc. for property located in Medina, Minnesota ("Property").  Complaint, ¶5.

Mortgage Electronic Registration System, Inc. ("MERS") was the nominee for Home

Loan Center, Inc.  Id.  Plaintiff specifically denied that any named defendant or

predecessor in interest had the legal right to declare a default on the note.  Id., ¶6.

Plaintiff pled that she "did not borrow money from any named Defendant."  Id.

Home Loan Center and U.S. Bank's predecessors in interest securitized the

mortgage loan into a mortgage-backed security trust entitled "GSR Mortgage Loan Trust

2006-9F Mortgage Pass-Through Certificates Series 2006-9F" ("GSR Mortgage Loan

Trust").  Id., ¶7.  The securitization process was governed by a Master Servicing and

Trust Agreement ("MSTA").  Id., ¶7.  The MSTA required that the parties to the

securitization documents create and deliver documents creating a complete chain of

title from the loan originator to the legal owner of the mortgage loan.  Id., ¶8.  Bank of

---

claims against them be dismissed.  See Sonsalla v. Mortgage Elec. Registration Sys.,
Inc., Civ. No. 13-659 (JRT/JSM), 2013 WL 4052825, at *1 (D. Minn. Aug. 9, 2013)
(citing Estate of Rosenberg ex rel. Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir.1995)
(affirming dismissal of unidentified defendants about whom no factual allegations were
made)).

America ("BOA") conducted a foreclosure on the Property,[2] but Plaintiff contended that BOA did not have any right title or interest in the loan, mortgage or Property.  BOA had been the servicer of the GSR Mortgage Loan Trust, but sold its servicing rights to Nationstar on January 6, 2013.  Id., ¶10.  When Nationstar acquired its servicing rights, it did not acquire any rights in the mortgage or Property.  Id., ¶11.  The MSTA provided that the rights of the parties to the GSR Mortgage Loan Trust were governed by New York law, and that pursuant to Wells Fargo Bank, N.A. v. Erobobo, 972 N.Y.S.2d 147 (N.Y. Sup. Ct. 2013), if a trust asset is not actually transferred into a trust in accordance with the terms and timing indicated by the trust, then the trust's claim to that asset is void.  Id., ¶¶13-18.  New York law further holds that every sale, conveyance, or other act of the trustee in contravention of the trust is void.  Id., ¶18.

On March 31, 2011, Youda Crain, Assistant Secretary of MERS, executed an Assignment of Mortgage, which assigned the mortgage from MERS to BAC Home Loan Servicing, L.P. ("BAC").  Id., ¶25, Ex. 8 (Assignment of Mortgage).  The Assignment was recorded in the Hennepin County Registrar of Title's Office on April 12, 2011.  Id.  On April 11, 2011, attorney James Geske, Vice-President of Wilford & Geske, as attorney-in-fact for BAC, signed the Notice of Pendency & Power of Attorney to Foreclose Mortgage, which authorized the law firm to foreclose on the mortgage by advertisement and "to do all things necessary and incident thereto.".  Id., ¶26, Ex. 9 (April 11, 2011 Notice of Pendency & Power of Attorney to Foreclose).  The Notice of Pendency &

---

[2]      In her memorandum in opposition to defendants' motion to dismiss, plaintiff stated that U.S. Bank commenced the foreclosure.  Plaintiff's Memorandum in Opposition to Motion to Dismiss ("Pl. Mem. Opp."), p. 22 [Docket No. 9].  The Notice of Foreclosure described MERS as the mortgagee, with an assignment from MERS to BAC.  Complaint, Ex. 10.  There is no reference in the foreclosure record to U.S. Bank.

Power of Attorney to Foreclose Mortgage was filed with the Hennepin County Registrar of Title's Office on April 12, 2011. Id.

A sheriff's sale of the Property was conducted on August 17, 2011. Id., ¶27. BOA, as successor by merger to BAC, appeared at the sale and bid the amount allegedly due on the note, $880,223.45. Id., Ex. 10 (Sheriff's Certificate of Sale and Foreclosure Record). Plaintiff specifically denied that BOA had the right to exercise the power of sale in the mortgage or that BOA held the note on the date of the sheriff's sale. Id., ¶27. On September 5, 2013, Daniel Robinson as Assistant Secretary of BOA, signed a limited warranty deed to transfer the Property from BOA to Nationstar. Id., ¶28. As of the date of the Complaint, the limited warranty deed had not been recorded. Id., ¶28.

The Complaint alleged that the Office of the Comptroller of Currency, U.S. Bank and BOA entered into a Consent Order on April 13, 2011, in which BOA and U.S. Bank were found to have engaged in "unsafe and unsound" banking practices in conducting foreclosures. Id., ¶30. In connection with the Consent Order, MERS revoked the authority to initiate foreclosures in MERS's name after July 22, 2011. Id., ¶32.

According to plaintiff, the foreclosure was void because the Assignment of Mortgage from MERS to BAC violated the terms of the securitization documents and New York law, "which requires execution and delivery of all assignments of mortgage prior to the [trust] closing date of October 30, 2006." Id., ¶35. According to plaintiff, on or about October 30, 2006, U.S. Bank certified receipt of assignments of mortgage from Home Loan Center to GS Mortgage Securities Group and from GS Mortgage Securities

Group to U.S. Bank, as trustee for the GSR Mortgage Loan Trust, yet none of these assignments were recorded. Id.

Plaintiff further alleged that the foreclosure was void for the following reasons: (1) BOA did not have the right to conduct the foreclosure because it lacked any interest in the Property; (2) the Notice of Pendency violated Minn. Stat. §580.05 because there was no "of record" evidence that BAC empowered Geske to execute the Notice of Pendency; (3) the Notice of Foreclosure did not list the prior assignees of the mortgage, in violation of Minn. Stat. §580.04[3]; and (4) there was no valid, of-record power of attorney from BOA to Nationstar authorizing the execution of the limited warranty deed. Id., ¶37.

Plaintiff pled the following causes of action:

Count I sought a determination of adverse claims under Minn. Stat. §599.01, et. seq. This Count alleged that in a quiet title action, defendants have the burden of proof, and consequently, defendants must prove their interest in the Property by a preponderance of evidence. Id., ¶¶39-48.

Count II sought a declaratory judgment pursuant to Minn. Stat. §555.02 that "defendant's" interest in the Property or Mortgage is void, the foreclosure is void, and that plaintiff remained the fee owner of the Property. Id., ¶¶50, 51.

---

[3]     Minn. Stat. §580.04 requires that that the notice in a foreclosure by advertisement provide the "name of the mortgagor, the mortgagee, each assignee of the mortgage, if any, and the original or maximum principal amount secured by the mortgage.

Count III alleged slander of title based on the defendants' drafting and recording of documents[4] that plaintiff claimed were false and not executed by legally authorized persons, which evidenced a reckless disregard for the truth and which created a cloud on plaintiff's title to the Property.  Id., ¶¶43-47.

As relief, plaintiff sought a determination of the alleged adverse interests in the Property; a declaratory judgment that the Mortgage, Sheriff's Certificate of Sale, Assignment of Mortgage, and Notice of Pendency and Power of Attorney were void; and an order that plaintiff is the fee owner of the Property; and monetary damages. Complaint, Prayer for Relief, ¶¶I, II, III.

Defendants moved to dismiss the Complaint, arguing that plaintiff was barred by the preclusion doctrines of res judicata and collateral estoppel because she had already sued, litigated and lost the same claims and issues against Bank of America in Wang Xang Xiong v. Bank of America, N.A., Civ. No. 11-03377 (JRT/JSM), 2012 WL 4470281 (D. Minn. Aug. 10, 2012), aff'd sub nom., Welk v. Bank of Amer., N.A., 515 Fed. Appx. 640 (8th Cir. 2012).  Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def's Mem."), pp. 3-5 [Docket No. 5].

In addition, defendants moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, contending that plaintiff alleged no facts to establish that U.S. Bank has an interest in the Property.  Plaintiff's only evidence of U.S. Bank's involvement with the Property is a print-out of a MERS ServicerID lookup, listing U.S. Bank, trustee, as the "investor" of the mortgage loan.  Id.,

---

[4]     The Complaint does not identify these documents, but the Court assumed plaintiff was referring to the Assignment of Mortgage signed by Crain and the Notice of Pendency & Power of Attorney signed Geske.

p. 11 (citing Complaint, Ex. 4).  Defendants noted that the printout was undated and plaintiff did not state when she retrieved the information.  Id.

As to the quiet title claim, defendants argued that plaintiff was simply wrong that all she needed assert was that she was in possession of the Property and that defendants claim an adverse interest.  Id., p. 13.  According to defendants, this "burden shifting" argument has been firmly rejected by every court to consider it.  Id., pp. 13-14.  According to defendants, BOA had full authority to foreclose because it was the mortgagee of record.  Id., pp. 14-15 (citing affidavit of Andrew D. Peters ("Peters Aff."), Ex. A) (Assignment of Mortgage from MERS to BAC, which later became BOA) [Docket No. 7-1].  Plaintiff's contention that BOA could not purchase the property at the sheriff's sale because it was not the "lawful holder of the note," (Complaint, ¶27), was simply a reiteration of the universally rejected "show me the note" theory.  Id., p. 14.[5]

Defendants rejected plaintiff's reliance on the MSTA and New York trust law to invalidate the foreclosure.  Id., pp. 15-17.  Defendants noted that plaintiff never established that her loan was securitized and made subject to the MSTA, but even if it was, her claim still failed because she was not a party to the MSTA and lacked standing to claim that violations of the MSTA invalidated her mortgage.  Id., p. 16.  Additionally, non-judicial foreclosure is exclusively governed by Minnesota state law.  Id., p. 17.

---

[5]     This theory has been propounded in the past by plaintiff's attorney William Butler. Butler was suspended from practice before the United States Court of Appeals for the Eighth Circuit on December 26, 2013.  In re Butler, No. 13–9013 (8th Cir. Dec. 26, 2013).  As a result, Butler was automatically suspended from practice before the District Court, effective December 26, 2013. See D. Minn. L.R. 83.6(b)(1); In re Butler, Misc. No. 13–49(MJD), ECF No. 10 (D. Minn. Jan. 14, 2014).  Plaintiff is currently unrepresented by counsel.

As to plaintiff's argument regarding unrecorded assignments, defendants understood that plaintiff was contending that because the MSTA allegedly required U.S. Bank to acknowledge receipts of assignments of mortgage by October 20, 2006, that U.S. Bank had in fact acknowledged receipts of assignments by that date.  Id. Defendants characterized this allegation as purely speculative.  Id.  Further, even if U.S. Bank certified the receipt of certain assignments, plaintiff did not plead that the assignments related to her mortgage, as opposed to any other securitized mortgage in the pool.  Id., p. 18.  Finally, the public record makes it clear that there was a single assignment from MERS to BAC, which became BOA.  Peters Aff., Ex. A.  BAC commenced the foreclosure proceedings, therefore, there is an unbroken chain of title from the date of the mortgage to the date of the foreclosure sale.  Id., p. 19.  Plaintiff's allegations regarding unrecorded assignments are speculative and not supported by any evidence.  Id.

Defendants rejected plaintiff's contention that Geske lacked authority to execute the Notice of Pendency & Power of Attorney, noting that this claim was not supported by any facts.  As to plaintiff's contention that there was no "of record" power of attorney authorizing the limited warranty deed from BOA to Nationstar, defendants noted that Minn. Stat. §580.05, on which plaintiff relied, relates only to attorneys employed to conduct a foreclosure; it does not address the power of attorneys to execute a limited warranty deed.  Id., p. 21.

Lastly, defendants argued that plaintiff's quiet title action was barred by the doctrine of unclean hands because quite title is an equitable remedy and parties seeking equitable relief must come to court with clean hands.  Id., p. 22.  Plaintiff

defaulted on her mortgage and continues to live in the Property without paying, and, therefore, comes to court with unclean hands. Id., pp. 21-22.

As to plaintiff's declaratory judgment cause of action, defendants contended that the claim failed because declaratory judgment is not available when there is no independent legal basis for the requested relief. Id., p. 22. Here, plaintiff's underlying quiet title claim failed; therefore, her declaratory judgment claim failed. Id.

Defendants sought dismissal of plaintiff's slander of title claim on the ground that plaintiff's assertion that the defendants slandered title to the property by drafting and recording false and invalid documents not signed by authorized persons was unsupported by any facts and, at any rate, plaintiff failed to plead malice, a necessary element of slander of title. Id., p. 23 (citing Blaylock v. Wells Fargo, N.A., Civ. No. 12-693 (ADM/LIB), 2012 WL 2529197, at *6 (D. Minn. June 29, 2012) (describing elements of slander of title)).

## II.    LEGAL STANDARDS

In considering a motion to dismiss under Rule 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. Ashley County, Ark. v. Pfizer, Inc., 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. Blankenship v. USA Truck, Inc., 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Rule 8 of the Federal Rules of Civil Procedure and meet the principles articulated by the United States Supreme Court in

Ashcroft v. Iqbal, 556 U.S. 662 (2009) and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than a unadorned, the-defendant-unlawfully-harmed-me-accusation." Iqbal, 556 U.S. at 678 (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 677 (quoting Twombly, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to 'state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Ritchie v. St. Louis Jewish Light, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

As a general rule, the Court may not consider materials "outside the pleadings" on a motion to dismiss, without converting the motion to dismiss to a motion for summary judgment. Fed. R. Civ. P. 12(d). "The court, however, 'may consider some

materials that are part of the public record or do not contradict the complaint, as well as materials that are necessarily embraced by the pleadings,'" without converting the motion into one for summary judgment.  See Little Gem Life Sciences, LLC v. Orphan Medical, Inc., 537 F.3d 913, 916 (8th Cir. 2008) (quoting Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999) (internal citation and punctuation omitted)); see also Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."); Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697, n. 4 (8th Cir. 2003).

For the reasons set forth below, the Court concludes that plaintiff failed to state a claim for relief and therefore, defendants' motion should be granted.[6]

## III.   DISCUSSION

### A.   Quiet Title

In Minnesota, "[a]ny person in possession of real property personally . . . may bring an action against another who claims an estate or interest therein, or a lien thereon, adverse to the person bringing the action, for the purpose of determining such adverse claim and the rights of the parties, respectively."  Minn. Stat. §559.01.

---

[6]     As this Court has determined that plaintiff's underlying claims fail on the merits, it need not decide whether her claims are barred by issue and claim preclusion.  See Simmer v. HSBC Bank USA, N.A., Civ. No. 13-1549 (DSD/AJB), 2013 WL 6244710, at *5 (D. Minn. Dec. 3, 2013) (declining to reach a determination on res judicata or estoppel because the underlying claims fail on the merits); Schumacher v. Federal Home Loan Mortg. Corp., Civ. No. 13-29 (DSD/FLN), 2013 WL 3033746, at *2 (D. Minn. June 17, 2013) (stating "defendants argue that this action is barred by res judicata. . .and that this lawsuit is nothing more than a brazen attempt to relitigate Schumacher's claim.  The court need not reach the res judicata determination, however, as the underlying claims. . .fail on the merits.).

In response to defendants' motion to dismiss the quiet title claim, plaintiff contended that under Minnesota law she only had to plead that she was in possession of the Property and defendants had a claim adverse to hers.[7]  Pl. Opp. Mem., pp. 19-20. According to plaintiff, once these elements are pled, the burden shifted to defendants to prove the validity of their claim.  Id., p. 20.  Moreover, plaintiff maintained the Federal Rules of Civil Procedure do not alter the burden of proof of their state law quit title claim. Id.

Plaintiff further contended that her quiet title claim was viable because if Nationstar was relying on the recorded assignments and notices of pendency, then by

---

[7]   The Minnesota Court of Appeals has rejected plaintiff's argument that a quiet title claim premised solely on allegations that she was in possession of the Property and defendants had a claim adverse to her states a cause of action under Minnesota law.  In a case similar to the instant suit and relying on the standards for pleading articulated in Twombly, the Court of Appeals stated:

> In their amended complaint, appellants summarily claim that they are in possession of their respective properties and that Deutsche Bank's mortgage liens are invalid.  Their only argument in this appeal is that these summary allegations are sufficient to overcome a motion to dismiss.  We disagree.

> Adopting appellants' position would mean that quiet-title claims will never be dismissed when merely the two facts of possession and invalid mortgage lien are alleged, without regard for how these facts would give rise to an entitlement to relief. This result undermines the court's duty to determine "whether the complaint sets forth a legally sufficient claim for relief." See Hebert [v. City of Fifty Lakes, 744 N.W.2d 226, 229 (Minn.2008)]. Beyond the summary facts alleged, appellants must present more than just labels or conclusions in their complaint to survive a motion to dismiss.

Mutua v. Deutsche Bank Nat. Trust Co., 2013 WL 6839723, at *2 (Minn. Ct. App. Dec. 30, 2013).

failing to deliver these documents into the trust by the trust's closing date of October 30, 2006, the trust's claim to the Mortgage was void under New York law. Id., pp. 16-17. In the alternative, plaintiff maintained that even if Nationstar had followed the Pooling and Service Agreement requirements, the foreclosure was void because Nationstar failed to record the all of the assignments prior to the commencement of the foreclosure by advertisement as required by Minn. Stat. § 580.02. Id., p. 14. Plaintiff also contended that the foreclosure violated Minn. Stat. §580.05 because there was no "of record" power of attorney authorizing Wilford & Geske to foreclose on behalf of U.S. Bank. Id., p. 18.[8]

Plaintiff's arguments fail for many reasons.

First, plaintiff's argument that the Court should apply the Minnesota state court pleading standards to her quiet title claim is meritless. Plaintiff's former counsel Butler has made this exact argument in the past and the Eighth Circuit could not have been more emphatic in its response: "[w]e apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." Karnatcheva v. J.P. Morgan Chase Bank, N.A., 704 F.3d 545 548 (8th Cir. 2013); see also Dunbar v. Wells Fargo Bank, N.A., 709 F.3d 1254, 1257 (8th Cir. 2013) (quoting Karnatcheva); Novak v. JP Morgan Chase Bank, 518 F. App'x 498, 501 (8th Cir. 2013) (quoting Karnatcheva); Gharwal v. Federal Nat'l Mortg. Ass'n, Civ. No. 13-685 (PJS/JSM), 2013 WL 4838904, at *2 (D. Minn. Sept. 11, 2013) (noting that the Eighth Circuit has "squarely and repeatedly rejected" this argument).

---

[8]   The record shows that Wilford & Geske foreclosed on behalf of BAC as predecessor to BOA, not U.S. Bank. Complaint, Ex. 10 (Sheriff's Certificate of Sale and Foreclosure Record).

In addition, the Eighth Circuit in <u>Karnatcheva</u> rejected the "burden of proof"

argument in a quiet title action advocated by plaintiff.  704 F.3d at 548.  As the court

explained in <u>Gharwal</u>:

> <u>Karnatcheva</u> rejected that argument, specifically holding that
> § 559.01 and the other authority on which [plaintiff] relies
> 'are not state substantive standards that govern the success
> of a quiet title claim.  <u>Karnatcheva</u>, 704 F.3d at 548.
> Whether or not the Eighth Circuit's holding was "error" is not
> for this Court to decide; <u>Karnatcheva</u> is binding precedent,
> and this Court must apply it.  The Court notes, however, that
> although he was addressing a different issue, plaintiff's
> counsel himself has conceded in the past "that, under Fed.
> R. Civ. P. 11, a quiet-title claim must be supported by an
> objectively reasonable basis for believing that the
> defendant's asserted interest in the property is invalid." <u>Welk
> v GMAC Mortg., LLC</u>, 850 F. Supp.2d 976, 988 (D. Minn.
> 2012), aff'd, 720 F.3d 736 (8th Cir. 2013).  Here, plaintiffs'
> quiet title claims are based only on conclusory statements
> and speculation, but no facts.  The claim fails under Rule
> 12(b)(6).

2013 WL 4838904, at *3.

Thus, this Court has reviewed plaintiff's quiet title claim applying the standards

governing Rules 8 and 12(b)(6) of the Federal Rules of Civil Procedure.

Second, mere allegations of a defendant's possession of the property and

conclusory statements that the defendant's adverse claims are invalid are insufficient to

state a claim for relief.  <u>See</u> <u>Karnatcheva</u>, 704 F.3d at 548 (affirming the district court's

dismissal of the plaintiff's quiet title claim "because the plaintiff's pleadings, on their

face, have not provided anything to support their claim that the defendants' adverse

claims are invalid, other than labels and conclusions, based on speculation that

transfers affecting payees and assignments of the notes were invalid."); <u>Yang Mee</u>

<u>Thao-Xiong v. American Mortg. Corp.</u>, Civ. No. 13-354 (MJD/TNL), 2013 WL 3788799,

at *4 (D. Minn. July 18, 2013) (quoting <u>Novak v. JP Morgan Chase Bank, N.A.</u>, Civ. No. 12-589 (DSD/LIB), 2012 WL 3638513, at *4 (D. Minn. Aug. 23, 2012), <u>aff'd</u>, 518 F. App'x 498 (8th Cir. 2013)) (finding that plaintiffs "'must state facts sufficient to allow the court to draw the reasonable inference that . . . she is in possession and that a defendant claims a right or title to the property, but has no such right or title.'").

The documents referenced in and attached to the Complaint show an unbroken chain of title through a recorded assignment of the mortgage from MERS to BAC (BOA) dated March 31, 2011 and recorded on April 12, 2011 and a properly recorded Notice of Pendency & Power of Attorney to Foreclose.   Complaint, Exs. 8 (April 12, 2011 Assignment of Mortgage), 9 (April 12, 2011 Notice of Pendency & Power of Attorney to Foreclose).   Thus, not only is there no factual support for plaintiff's bald assertions regarding unrecorded assignments, the record shows the exact opposite—there were no unrecorded assignments of the Mortgage and the foreclosure was proper.

Third, plaintiff's assertion that defendants failed to deliver to the trust several unrecorded assignments of mortgage is without merit.   This Court has previously noted that documents governing mortgage-backed trusts often do not require a chain of written mortgage assignments when, as here, MERS is named the nominee for the lender and is listed as the Mortgagee.   <u>See</u>, <u>Wolff v. Bank of New York Mellon</u>, --F. Supp.2d--, Civ. No. 13-2175 (PJS/JSM), 2014 WL 641510, at *12, n. 4 (D. Minn. Feb. 19, 2014) (citing <u>Wollmering v. JPMorgan Chase Bank, N.A.</u>, No. A12–1926, 2013 WL 3779217, at *5 (Minn. Ct. App. July 22, 2013) ("Appellants argue that the Wollmering and Bakke/Fink mortgages were parts of trusts that required mortgage assignments according to the trust terms and that '[t]he trust documents are therefore evidence of the

unrecorded assignments.' Section 2.01 of the PSAs does require that Structured Asset deposit with JPMorgan Chase the original mortgage. But under the express language of the PSAs, the requirement that Structured Asset deposit a certified copy of the assignment of the mortgage to JPMorgan Chase applies 'unless the Mortgage Loan is a MOM loan,' and a Mom Loan is defined as '[w]ith respect to any Mortgage Loan, MERS acting as the mortgagee of such Mortgage Loan, solely as nominee for the originator of such Mortgage Loan and its successors and assigns, at the origination thereof.' Thus, Structured Asset was not required to deposit certified copies of assignments of the Wollmering and Bakke/Fink mortgages, which named MERS as mortgagee as nominee for the originator and its successors, and the trust documents are not evidence of unrecorded assignments.")); Colton v. U.S. Nat. Bank Ass'n, Civ. No. 3:12-3584-D, 2013 WL 1934560, at *4 (N.D. Tex. May 10, 2013) ("[I]t is reasonable that the PSA would not require that a MERS-designated mortgage loan be assigned to U.S. Bank to evidence transfer of ownership to the Trust. The purpose of MERS is to avoid the task of preparing and recording separate assignments for each mortgage conveyance.") (citing MERS: The Mortgage Electronic Registration System, 63 Consumer Fin. L.Q. Rep. 262, 263 (2009)).

Fourth, even if the Assignment of Mortgage was required to be delivered to the trust, New York law does not void BOA's interest in the Mortgage. Plaintiff cites Wells Erobobo, 972 N.Y.S.2d 147, at *8-9, in which the court concluded that the transfer of an assignment of a mortgage into a trust in violation of the terms of the PSA—made 18 months after the trust had "closed" and had not been assigned in by the depositor— rendered the assignment void under New York law. However, the majority of courts that

have examined <u>Erobobo</u> have criticized the decision and held that under New York law, an assignment of a mortgage into a trust in violation of the terms of the PSA is voidable, and not void, as the action can be ratified by the beneficiaries.   <u>See</u>, <u>e.g.</u>, <u>Butler v. Deutsche Bank Trust Co. Amer.</u>, --F.3d--, Civ. No. 21-2108, 2014 WL 1328296, at *10, n. 8 (1st Cir. April 4, 2014) ("[T]he vast majority of courts to consider the issue have rejected <u>Erobobo's</u> reasoning, that despite the express terms of N.Y. Est. Powers & Trust Laws §7-2.4, the acts of a trustee in contravention of a trust may be ratified, and are thus voidable) (citations omitted);   <u>Felder v. Countrywide Home Loans</u>, Civ. No. H–13–0282, 2013 WL 6805843, at *19 (S.D. Tex. Dec. 20, 2013) (quoting <u>Green v. Bank of Amer. N.A.</u>, Civ. No. H–13–1092, 2013 WL 3937070, at *3 (S.D. Tex. July 30, 2013), citing <u>Mooney v. Madden</u>, 193 A.D.2d 933, 597 N.Y.S.2d 775, 776 (N.Y. App. Div. 1993)) ("'Courts applying New York law have treated actions by trustees as <u>voidable</u>.'");   <u>Halacy v. Wells Fargo Bank, N.A.</u>, Civ. No. 12-11447-TSH, 2013 WL 6152351, at *3 (D. Mass. Nov. 21, 2013) (citing <u>Koufos v. U.S. Bank N.A.</u>, 939 F. Supp.2d 40, 49 n. 5, 56 n. 2 (D. Mass. 2013) (criticizing <u>Erobobo</u> and finding that a "non-PSA-compliant" transaction is typically "voidable," rather than "void" under New York law));   <u>Deutsche Bank Nat. Trust Co. v. Adolfo</u>, Civ. No. 12-C-759, 2013 WL 4552407, at *3 (N.D. Ill. Aug. 28, 2013) ("we are persuaded by the courts that have held that a transfer that does not comply with a PSA is voidable, not void.") (citations omitted);   <u>Calderon v. Bank of America N.A.</u>, 941 F. Supp.2d 75, 7663 (W.D. Tex. 2013) (finding that New York Courts have held that a beneficiary can ratify a trustee's <u>ultra</u> <u>vires</u>, and if an act may be ratified, it is voidable rather than void) (citing <u>Mooney v. Madden</u>, 193 A.D.2d 933, 597 N.Y.S.2d 775 (1993); <u>Matter of Estate of Janes</u>, 165 Misc.2d 743, 630 N.Y.S.2d 472,

477 (Sur. 1995), <u>aff'd as modified sub nom.,</u> <u>Matter of Janes</u>, 223 A.D.2d 20, 643

N.Y.S.2d 972 (1996), <u>aff'd sub nom.,</u> <u>Matter of Estate of Janes</u>, 90 N.Y.2d 41, 659

N.Y.S.2d 165, 681 N.E.2d 332 (N.Y. 1997); <u>Leasing Serv. Corp. v. Vita Italian</u>

<u>Restaurant</u>, 171 A.D.2d 926, 566 N.Y.S.2d 796, 797-98 (1991); <u>Hine v. Huntington</u>, 118

A.D. 585, 103 N.Y.S. 535, 540 (1907); 106 N.Y. Jur.2d Trusts § 431 ("[T]rustee may

bind trust to an otherwise invalid act or agreement which is outside the scope of the

trustee's power when beneficiary consents to or ratifies the trustee's <u>ultra</u> <u>vires</u> act or

agreement.")) (citations omitted).

Fifth, plaintiff's claim that "documents" were "not executed by legally authorized

persons," (Complaint, ¶53), "do[es] not hold up to even the slightest scrutiny."  <u>Simmer</u>,

2013 WL 6244710, at *3 (plaintiffs' allegations regarding individuals' alleged lack of

authority to sign Notices of Pendency and Powers of Attorney failed because the

allegations are "merely conclusory assertions without any factual allegations to support

them."); <u>Segura v. Federal Nat'l Mortg. Ass'n</u>, Civ. No. 13-531(SRN/JJK), 2013 WL

3034096, at *2 (D. Minn. June 17, 2013) (rejecting "contention that nearly every

individual who signed a document in support of the foreclosure did not have the

authority to do so" as "implausible and speculative, just the sort of 'vague claims' that

have been rejected repeatedly by courts in this District and by the Eighth Circuit Court

of Appeals.") (citing <u>Mine v. Federal Home Loan Mortg. Corp.</u>, Civ. No. 13–220, 2013

WL 2443852, at *4 (D. Minn. June 5, 2013); <u>Welk v. Federal Nat'l Mortg. Ass'n</u>, Civ. No.

12-2864 (SRN/TNL), 2013 WL 2155463, at *4 (D. Minn. May 17, 2013) ("[Plaintiff]

insists that the individual who signed the assignment to Wells Fargo and the individual

who signed the power of attorney allowing Wells Fargo to institute foreclosure

proceedings did not have the authority to do so, and that the law firm and Trisko knew that the individuals had no authority but proceeded with the foreclosure anyway.  But there are no facts of any kind—no evidence pled supporting these allegations.").

Additionally, even if there was any truth to plaintiff's unsupported and vague statements that the MSTA or GSR Mortgage Loan Trust agreement applied to plaintiff's mortgage (and there is no evidence that they did) or there was any truth to plaintiff's speculative statements about the lack of signing authority of Crain (as to the April 12, 2011 Assignment of Mortgage) or Geske (as to the April 12, 2011 Notice of Pendency & Power of Attorney to Foreclose),[9] plaintiff suffered no injury in fact as a result and,

---

[9]     To the extent that plaintiff alleged that the foreclosure is void because there is no "of record" evidence of the individual's authority to execute the Assignment of Mortgage or foreclosure-related documents as required by Minn. Stat. §§ 580.05 and 507.413, (Complaint, ¶ 35), this claim is meritless.

To foreclose a mortgage by advertisement, the foreclosing party must meet the mandatory requirements prescribed by the foreclosure by advertisement statutes. Jackson v. Mortgage Elec. Registration Sys., 770 N.W.2d 487 495 (Minn. 2009).  In this regard,

> [s]ection 580.02 contains three requirements that must be met before a mortgagee can foreclose by advertisement:
>
> (1) that some default in a condition of such mortgage has occurred, by which the power to sell has become operative;
>
> (2) that no action or proceeding has been instituted at law to recover the debt then remaining secured by such mortgage ...
>
> (3) that the mortgage has been recorded and, if it has been assigned, that all assignments thereof have been recorded....

Id. at 496 (quoting Minn. Stat. § 580.02).

Minn. Stat. § 580.05 governs the recording of mortgage assignments by an attorney at law. It provides:

> When an attorney at law is employed to conduct such foreclosure, the authority of the attorney at law shall appear by power of attorney executed and acknowledged by the mortgagee or assignee of the mortgage in the same manner as a conveyance, and recorded prior to the sale in the county where the foreclosure proceedings are had. If such attorney be employed on behalf of such mortgagee or assignee by an attorney in fact, the attorney's authority shall likewise be evidenced by recorded power.

Minn. Stat. § 580.05.

Minn. Stat. § 507.413 states:

> (a)      An assignment, satisfaction, release, or power of attorney to foreclose is entitled to be recorded in the office of the county recorder or filed with the registrar of titles and is sufficient to assign, satisfy, release, or authorize the foreclosure of a mortgage if:
>
>> (1) a mortgage is granted to a mortgagee as nominee or agent for a third party identified in the mortgage, and the third party's successors and assigns;
>>
>> (2) a subsequent assignment, satisfaction, release of the mortgage, or power of attorney to foreclose the mortgage, is executed by the mortgagee or the third party, its successors or assigns; and
>>
>> (3) the assignment, satisfaction, release, or power of attorney to foreclose is in recordable form. . . . .

Called "the MERS statute," Minn. Stat. § 507.413 is a recording statute that creates no obligations and does not change the requirements of the foreclosure by advertisement statute; "rather, it uses recording to resolve disputes between parties who have no contractual relationship, but who lay claim to the same title." Jackson, 770 N.W.2d at 494 (citation omitted).

Reading all of these statutes together, it is evident that there is no legal requirement that the origin of an individual's or entity's "authority" must be recorded in order to render the foreclosure of a mortgage valid.

therefore lacks standing to pursue a quiet title claim on this basis.  See Novak, 2012 WL

3638513, at *6, aff'd, 518 F. App'x 498 (8th Cir. 2013) (dismissing plaintiffs' complaint

---

First, "[s]ection 580.02 is strictly construed, and a foreclosing party must demonstrate "exact compliance" with the statute's requirements." Beecroft v. Deutsche Bank Nat. Trust Co., 798 N.W.2d 78, 83 (Minn. Ct. App. 2011), review denied (July 19, 2011) (quoting Jackson, 770 N.W.2d at 494). "Absent strict compliance with section 580.02, the foreclosure proceeding is void." Id. (citing Jackson, 770 N.W.2d at 494).

Second, "[t]he purpose of the statutory recording requirements is to ensure that a mortgagor has notice and an opportunity to redeem." Beecroft, 798 N.W.2d at 83 (citing Jackson, 770 N.W.2d at 495).  Therefore, "the plain language of section 580.02 requires only that the mortgage and any assignment of the mortgage be recorded to entitle a mortgage assignee to foreclose by advertisement," and nothing more.  Id.

Third, there is nothing in Minn. Stat. § 507.413, § 580.02, § 580.05 or in any other statute that requires that the recording of the source of the authority to execute an assignment of mortgage or the authority to execute foreclosure-related documents by an attorney-in-fact.  See Beecroft, 798 N.W.2d at 83 ("Indeed, Minnesota courts have recognized that the power to execute an assignment by an attorney in fact need not be recorded to satisfy the foreclosure-by-advertisement statute."); at 84 ("Applying the plain language of section 580.02, we conclude that there is no requirement to record the instruments authorizing Citi Residential to act as Ameriquest's attorney in fact for mortgage assignments and memorializing the election of the special officers to execute the mortgage assignment for Citi Residential on behalf of Ameriquest.   Only the Beecroft mortgage and Ameriquest's assignment of the Beecroft mortgage to Deutsche Bank by Ameriquest's attorney in fact are required to be recorded."); Molde v. CitiMortgage, Inc., 781 N.W.2d 36, 43 (Minn. Ct. App. 2010) (holding that "a document evidencing the authority of an attorney-in-fact to initiate a foreclosure by advertisement" need not be recorded in the tract index against the property); Yang Mee Thao-Xiong, 2013 WL 3788799, at *3 ("Moreover, there is no evidence that the assignment of the mortgage lacked proper authority under Minn. Stat. § 507.413.  Plaintiff argues that § 507.413 requires that a power of attorney be recorded prior to commencing a non judicial foreclosure.   By its plain language, however, § 507.413 contains no such requirement. Furthermore, § 507.413 has never been interpreted to require such.").

In sum, this Court concludes that the "strict compliance" standard applied by the Minnesota courts to the statutes governing foreclosures by advertisement extends only to the recording of mortgages, assignments of mortgages and the power to conduct foreclosure-related proceedings, and no more.  There are no statutes that require the recording of the origin of the individual's or entity's authority to sign the assignments of mortgage or to sign the notice of pendency or powers of attorney.

with prejudice and noting that they lacked standing to challenge any purported breach of a PSA); Karnatcheva, 704 F.3d at 547 ("The plaintiffs base this request for declaratory relief on allegations that their notes and mortgages were transferred to trusts underlying mortgage-backed securities and that their foreclosures violated the terms of the trust agreements relating to these mortgage-backed securities. But district courts in Minnesota have recently addressed this issue and have uniformly held that mortgagors do not have standing to request declaratory judgments regarding these types of trust agreements because the mortgagors are not parties to or beneficiaries of the agreements. We believe that the reasoning in these cases is sound, and we adopt it.") (internal citations omitted); Sorem, 2013 WL 4611115, at *3 ("Plaintiffs base their claims on the primary argument that the foreclosure is void because unrecorded assignments exist, and in support Plaintiffs argue that BNYM's Pooling and Servicing Agreement requires that an assignment be executed in favor of BNYM. Plaintiffs lack standing to make this challenge.") (citations omitted); Quale v. Aurora Loan Services, LLC, Civ. No. 13-621 (JNE/AJB), 2013 WL 3166584, at *1 (D. Minn. June 20, 2013) ("Insofar as the Quales based their claims on the allegations that an individual lacked authority to execute the assignment of mortgage, the Court rejects this argument because the Quales lack standing to make such a challenge, and even if they did have standing, their claims are fatally implausible and speculative."); Forseth v. Bank of Am., N.A., Civil No. 13-38 (SRN/TNL), 2013 WL 2297036, at *5 (D. Minn. May 24, 2013) ("The allegations regarding unauthorized signatures on every document related to the foreclosure process for the Forseths' mortgage are similarly implausible and pure speculation.  But even if the signatures were unauthorized, the harm caused by the lack

of signing authority is harm to MERS or BAC, in the case of Mr. Bruns, or BAC/Bank of America or Fannie Mae in the case of Mr. McDaniel and Ms. Girvan. There is no allegation in the Amended Complaint that any of these individuals falsely initiated foreclosure proceedings against the Forseths' property, and the documents in the public records belie such a claim in any event. The Forseths defaulted on their mortgage by not making payments as they promised. Even if all three of these individuals lacked signing authority, as the Forseths claim, they have suffered no injury as a result and therefore have no standing to pursue their claims.") (citations omitted); Kaylor v. Bank of Am., N.A., Civ. No. 12-1586 (DSD/SER), 2012 WL 6217443, at *5 (D. Minn. Dec. 13, 2012) (finding that even if individual who effectuated the assignment of the mortgage did not have authority to do so, homeowners not a party to the mortgage assignment had no standing to challenge the assignment.); Stinson v. U.S. Bank, N.A., Civ. No. 12-68 (SRN/AJB), 2012 WL 2529354, at *3 (D. Minn. June 12, 2012) ("[T]o the extent that the [plaintiffs] allege that the defendants did not comply with the provisions of the PSA, the [plaintiffs] have no standing to assert claims on this basis because they are not parties or third-party beneficiaries to such agreements."); Greene v. Home Loan Servs., Inc., Civ. No. 09-719 (DWF/JJK), 2010 WL 3749243, at *4 (D. Minn. Sept. 21, 2010) ("Plaintiffs do not have standing to bring their challenge regarding the securitization of the mortgage or the Pooling and Service Agreement.  Even assuming this matter was adequately pled, which it was not, Plaintiffs are not a party to the Pooling and Service Agreement and therefore have no standing to challenge any purported breach of the rights and obligations of that agreement.").

Sixth, the only evidence that U.S. Bank has any interest in the mortgage is a screen shot of a "MERS ServicerID Report" that showed U.S. Bank as an "investor" in the loan and BOA as the "servicer."  Complaint, Ex. 4.  This screen shot was taken on September 6, 2013, over two years after the foreclosure sale.  It is irrelevant to the issue of unrecorded assignments before the foreclosure sale.

Seventh, the Court rejects plaintiff's allegation that BOA lacked authority to foreclose because plaintiff "did not borrow money from any named defendant." Complaint, ¶6.  The Court agrees that this allegation is a variant of the meritless, completely discredited "show me the note" theory propounded in the past by plaintiff's former lawyer, Butler.  See, e.g., Butler v. Bank of America, N.A., 690 F.3d 959, 962 (8th Cir.2012) (the "show me the note" argument "is foreclosed by the plain language of Minnesota's foreclosure statute); Ebbighausen v. JP Morgan Chase Bank, N.A., Civ. No. 10–3120(JRT/LIB), 2013 WL 53836, at *7 (D. Minn. Jan. 3, 2013) ("the law of this Circuit clearly establishes that different entities can hold the promissory note and legal title to the mortgage, and that the holder of legal title to the mortgage need not possess the promissory note before it can institute foreclosure by advertisement.") (citing Stein v. Chase Home Fin. LLC, 662 F.3d 976, 979–980 (8th Cir.2011) citing Jackson, 770 N.W.2d at 489–501)).

Lastly, a quiet title action is a proceeding in equity and as such, a plaintiff who seeks to quiet title must come to court with clean hands.  Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12–565 (DSD/TNL), 2012 WL 3612023, at *3 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013); see also Yang Mee Thao–Xiong, 2013 WL 3788799, at *4 (plaintiff's unclean hands in defaulting on her mortgage prevented her from

seeking equitable relief); <u>Stilp</u>, 2013 WL 1175025, at *4 ("Plaintiffs defaulted on their mortgage loan over four years ago. They seek to declare their mortgage invalid after defaulting; as such, they come to the present case with unclean hands.") (citation omitted).   Plaintiff, having defaulted on her mortgage, comes to court with unclean hands and is precluded from pursuing a quiet title claim.  <u>Novak</u>, 2012 WL 3638513, at *4 (citing <u>Santee v. Travelers Ins. Co.</u>, 275 N.W. 366, 368 (Minn.1937)) (finding that the plaintiffs had unclean hands because they were in default on their mortgage and, therefore, that they could not state a quiet title claim).

For all of these reasons, plaintiff's quiet title claim fails and should be dismissed.

### B.   <u>Slander of Title</u>

To state a claim for slander of title, a plaintiff must allege facts that show: (1) there was a false statement concerning the real property owned by the plaintiff; (2) the false statement was published to others; (3) the false statement was published maliciously; and (4) the publication of the false statement concerning title to the property caused the plaintiff pecuniary loss in the form of special damages.  <u>Paidar v. Hughes</u>, 615 N.W.2d 276, 279–80 (Minn. 2000) (citation omitted).   To plead malice, plaintiff "must raise factual allegations sufficient to create a plausible claim that at least one of the [  ] parties acted with a reckless disregard for the truth, 'despite a high degree of awareness of probable falsity.'"   <u>Dunbar</u>, 709 F.3d at 1258 (quoting <u>Brickner v. One Land Dev. Co.</u>, 742 N.W.2d 706, 711 (Minn. Ct. App. 2007)); <u>see</u> <u>also</u> <u>Quevli Farms, Inc. v. Union Sav. Bank & Trust Co.</u>, 178 Minn. 27, 226 N.W. 191, 192 (Minn. 1929) (concluding that to be a malicious statement, it must be a "groundless disparagement of the plaintiff's title or property . . . made without probable cause.").   The filing of an

instrument known to be inoperative is a false statement that, if done maliciously, constitutes slander of title. Kelly v. First State Bank of Rothsay, 177 N.W. 347, 347 (Minn. 1920). Additionally, plaintiff must establish that she relied on the alleged false statement. See Welk, 850 F.Supp.2d at 993-94.

The Court finds the slander of title claim must be dismissed for two reasons. As a preliminary matter, plaintiff never responded to defendants' unclean hands argument in her responsive memorandum. Plaintiff's failure to respond amounts to a waiver, and on that basis alone defendant's motion to dismiss her slander of title claim should be granted. See Christensen v. PennyMac Loan Servs., Inc., --F. Supp.2d --, Civ. No. 12-2995 (SRN/JSM), 2013 WL 6729142, at *4 (D. Minn. Dec. 19, 2013) (plaintiff's failure to respond to motion to dismiss resulted in waiver) (citing Mark v. Ault, 498 F.3d 775, 786 (8th Cir. 2007) (holding that failure to raise or address an issue constitutes abandonment) (citation omitted); Hewitt v. City of Minneapolis, Civ. No. 12–2132(DWF/FLN), 2013 WL 718189, at *5, n. 6 (D. Minn. Feb. 27, 2013) (plaintiff waived any arguments in opposition to defendants' motion to dismiss by failing to respond); Koenen v. Homecomings Fin., LLC, Civ. No. 11–945(DWF/SER), 2011 WL 3901874, at *2 (D. Minn. Sept. 2, 2011) (plaintiff's failure to respond to defendant's motion to dismiss warranted dismissal "on that basis alone"); Gharwal, 2013 WL 4838904, at *1, n. 2 (dismissing slander of title claim for failure to respond to defendants' arguments in favor of dismissal)).

Moreover, this claim should be dismissed on its merits because plaintiff alleged no facts from which this Court could infer that the defendants made a false statement, acted maliciously or that plaintiff suffered any pecuniary loss from a publication

concerning title to her property.  See Ko, 2013 WL 4052680, at *4 (dismissing similarly-pled slander of title claim).  Therefore, plaintiff failed to state a claim for slander of title, and dismissal is required.[10]

### C.   Declaratory Judgment

A declaratory judgment is a remedy, not a cause of action.  See, e.g., Onvoy, Inc. v. ALLETE, Inc., 736 N.W.2d 611, 617–618 (Minn. 2007) (a declaratory judgment action may be maintained only where there is a justiciable controversy); Buck v. American Airlines, Inc., 476 F.3d 29, 33 n.3 (1st Cir. 2007) (noting that the Declaratory Judgment Act, 28 U.S.C. § 2201 "creates a remedy, not a cause of action").  In light of the Court's conclusion that plaintiff's substantive claims must be dismissed under Rule 12(b)(6), "[she is] left with a remedy in search of right."  Scanlon v. Northwest Mortg., Inc., Civ. No. 11-3128 (MJD/TNL), 2012 WL 2885131, at *7 (D. Minn. July 13, 2012).  See also Lara, 2013 WL 3088728 at, *3 (finding that where plaintiff had failed to state a substantive claim, the Amended Complaint also failed to state a claim for declaratory judgment) (citing Weavewood, Inc. v. S & P Home Invs., LLC, 821 N.W.2d 576, [579] (Minn. 2012) ("A declaratory judgment is a procedural device through which a party's existing legal rights may be vindicated so long as a justiciable controversy exists.")).

---

[10]    The Court notes that a slander of title claim is subject to the heightened pleading standard of Fed. R. Civ. P. 9(b).  See Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027, 1032 (8th Cir. 2012) (Rule 9(b) applies to slander of title claims); Johnson v. Bank of New York Mellon, Civ. No. 13-2207(DSD/JSM), 2014 WL 129640, at *5 (D. Minn. Jan. 14, 2014); Ko, 2013 WL 3088728, at *4; Pope v. Federal Home Loan Mortg. Corp., Civ. No. 12-3094(SRN/JJG), 2013 WL 2251001, at *4 (D. Minn. May 22, 2013); Haubrich v. U.S. Bank Nat'l Ass'n, Civ. No. 12-565(DSD/TNL), 2012 WL 3612023, at *6 (D. Minn. Aug. 21, 2012), aff'd, 720 F.3d 979 (8th Cir. 2013).  Defendants did not argue in favor of dismissal based on plaintiffs' failure to meet this standard.  Suffice it to say, however, having failed to plead any facts to support a slander of title claim, the claim also fails to meet the Rule 9(b) standard.

Plaintiffs' claim for declaratory judgment must be dismissed because there is no legal basis for affording the remedy.

For all of these reasons, this Court recommends that plaintiff's suit be dismissed with prejudice.[11]

## IV.   RECOMMENDATION

For the reasons set forth above, it is recommended that:

1.    Defendants' Motion to Dismiss [Docket No. 4] be **GRANTED.**

2.    This matter be dismissed with prejudice.

Dated:  May 19, 2014

*Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

---

[11]    "Ordinarily dismissal of a [pleading] for failure to comply with Rule 8 should be with leave to amend." Michaelis v. Neb. State Bar Ass'n., 717 F.2d 437, 438-39 (8th Cir. 1983).   Nonetheless, when a complaint is so deficient or defective that the court is convinced that its defects cannot be cured through re-pleading, dismissal with prejudice is appropriate.   Such is the case here.   See McLean v. United States, 566 F.3d 391, 400 (4th Cir. 2009) ("to the extent . . . that a district court is truly unable to conceive of any set of facts under which a plaintiff would be entitled to relief, the district court would err in designating [a] dismissal to be without prejudice.  Courts, including this one, have held that when a complaint is incurable through amendment, dismissal is properly rendered with prejudice and without leave to amend."); McKesson HBOC, Inc. v. New York State Common Ret. Fund, Inc., 339 F.3d 1087, 1096 (9th Cir. 2003) (dismissal with prejudice is appropriate where "deficiencies in [plaintiff's] claims cannot be cured by amendment"); Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995) (a pro se litigant should be given chance to amend complaint unless it is "absolutely clear that the deficiencies of the complaint could not be cured by amendment."); Ikechi v. Verizon Wireless, Civ. No. 10-4554 (JNE/SER), 2011 WL 2118797, at *5, n. 6 (D. Minn. April 7, 2011) (recommending dismissal with prejudice of plaintiff's fraud claims because it was unlikely that plaintiff could cure the defective pleading on re-pleading), 2011 WL 2118791, at *3 (D. Minn. May 25, 2011) (adopting the Report and Recommendation of Magistrate Judge Rau regarding dismissal of plaintiff's fraud claims for failure to satisfy the particularity requirement of Rule 9(b)).

## NOTICE

Under D. Minn. LR 72.2(b) any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties by **June 9, 2014**,[12] a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  A party may respond to the objecting party's brief within ten days after service thereof.  All briefs filed under this Rules shall be limited to 3500 words.  A judge shall make a de novo determination of those portions to which objection is made.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable directly to the Circuit Court of Appeals.

---

[12]    The Court has allowed extra time for plaintiff to file her objections to this Report and Recommendation, as she is currently unrepresented by counsel.